IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff,

v.

MARCOS RIVERA-FERNÁNDEZ,

Defendant.

CRIMINAL NO. 25-400 (GMM)(HRV)

**REPORT AND RECOMMENDATION**

Pending before the Court is defendant Marcos Rivera-Fernandez's (hereinafter "Rivera-Fernández" or "Defendant") "Motion to Suppress Evidence Pursuant to Franks v. Delaware, 438 U.S. 154 (1978)." (Docket No. 26). The United States filed a response in opposition to Defendant's motion to suppress and for a *Franks* hearing. (Docket No. 30). The presiding District Judge referred this matter to me for report and recommendation. (Docket No. 28). For the reasons set forth below, I recommend that the motion be denied without an evidentiary hearing.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

On September 25, 2025, a grand jury sitting in this district returned an indictment charging Rivera-Fernández in six counts with possession with intent to distribute controlled substances and possession of firearms. (Docket No. 14). The contraband (controlled substances, drug paraphernalia, firearms, and ammunition) that gave rise to

1

the indictment was allegedly found in Defendant's home and vehicle following searches conducted by agents of the Puerto Rico Police Bureau ("PRPB") on September 22, 2025, pursuant to a state-issued search warrant and Defendant's written consent. The search warrant was authorized by a state-court magistrate judge after reviewing the application and affidavit of PRPB agent Melvin Guevárez-Guevárez ("agent Guevárez"). Below I summarize the facts and information that agent Guevárez submitted in support of his application for the search warrant at issue here.

On September 16, 2025, fellow PRPB agent Carlos Concepción-Ramos ("agent Concepción") met with a paid police informant who provided information about a house located in Margarita Street, intersection with Diana Street in Los Quinteros sector, Campanilla ward, in Toa Baja, Puerto Rico, which was allegedly used by an individual known as "Mickey" who is the owner of the Los Quinteros drug point. The informant described the house and further told agent Concepción that the same was used by Mickey to store weapons and "cook" the drugs. Agent Guevárez was instructed to investigate the confidential tip on September 17, 2025, and was assigned an unmarked vehicle with tinted windows, a portable radio. Additionally, agent Guevárez was going to use binoculars that he owns to conduct the surveillance.

On September 17, 2025, agent Guevárez, along with agent Concepción, went to the Villa Quintero community in Campanilla ward and arrived at around 10:00 a.m. The agents were able to locate the residence. They parked in a "strategic location" from where they had "full visibility" of the residence under surveillance. At around 11:20 a.m., agent Guevárez observed an individual, he physically described in detail, arrive at the residence riding a bicycle. This individual dismounted the bicycle, opened the pedestrian gate to

2

the house, went up a few small steps, and stood on the balcony after which he opened the door to the residence and entered. Agent Guevárez then saw this same person come out of the residence a few minutes later carrying a large transparent plastic bag containing transparent bags inside with a white powder that appeared to be cocaine. The agent also observed the grip of a black firearm with an extended magazine protruding from the right pocket of the individual's pants. Agent Guevárez further observed the person place the bag between his legs, draw the firearm from his pocket, and place it in his waist. He then placed the transparent bag inside the left pocket of his pants, got on the bicycle, and rode down Margarita Street where the agent lost sight of him. Agent Guevárez left the area planning to return in the afternoon.

Agent Guevárez returned at around 2:20 p.m. that day, and once again parked his vehicle in a strategic location where he had full visibility of the residence. At around 3:00 p.m., using his binoculars, the agent was able to see a person arrive at the residence riding a black motorcycle. This person opened the pedestrian gate, went up the steps to the balcony, opened the door of the residence, and entered. A few minutes later, the individual exited the house and stood on the balcony. Agent Guevárez observed that the person had a pistol-type rifle in his hands. The agent also saw the individual place the rifle leaning against the wall and take out a cellphone from his pocket to speak on it. After a few seconds, the person put the cellphone back in his pocket, grabbed the rifle and re-entered the residence. Later, the same individual came out of the residence this time holding a transparent bag containing what looked like white rocks, which in Agent Guevárez's experienced appeared to be cocaine. The individual closed the door and headed to the street where, after reaching the motorcycle, lifted its seat and hid the

plastic bag inside. He then rode the motorcycle down the street and stopped near where a cooler was set down to block part of the road. The individual stopped next to a light blue house where there were several people and began speaking with them. Agent Guevárez noticed that the people in front of the blue house began to point toward the area where he was parked. He also saw the man in the motorcycle take the plastic bag out and hand it to another individual next to the blue house. Fearing for his safety, agent Guevárez decided to leave the area. He went back to the police headquarters and reported his observations to his superior. The agent was instructed to apply for a search warrant which was eventually issued on September 19, 2025.

PRPB agents executed the search warrant on September 22, 2025, at approximately 9:00 a.m. (*See* Criminal Complaint, Docket No. 1-1). Rivera-Fernández was the sole occupant of the house and was detained while agents conducted the search. The search inside the home revealed, among other items, two firearms, one of which was later determined to be a machinegun, controlled substances, drug paraphernalia, and ammunition. It is alleged that Rivera-Fernández consented in writing to a search of his vehicle, a white Ford Ranger pickup truck that was parked in front of the residence. That search uncovered more controlled substances. The controlled substances seized field-tested positive to cocaine. Rivera-Fernández was arrested and transported to the PRPB Bayamón headquarters. On the same day, ATF agents responded to the PRPB headquarters in Bayamón. ATF agents conducted a custodial interview of Rivera-Fernández after he was advised of and waived his Miranda rights. In sum and substance, Rivera-Fernández corroborated and accurately described the location of the seized items in both his residence and vehicle, admitted ownership of the firearms, ammunition, and

drugs. He also admitted having a prior felony conviction making him a prohibited person, and that he had fired the Glock pistol in fully automatic mode.

The criminal complaint was authorized on September 23, 2025. (Docket No. 1). Rivera-Fernández had his initial appearance on the same day. (Docket No. 4). Subsequently, he was ordered detained pending trial. (Docket Nos. 11, 13 and 16). As noted above, the indictment was returned on September 25, 2025. (Docket No. 14). Defendant entered a plea of not guilty. (Docket No. 18). Rivera-Fernández filed his motion to suppress on March 13, 2026. (Docket No. 26). The motion was referred to me on April 7, 2026. (Docket No. 28). The Government filed its response in opposition on April 24, 2026. (Docket No. 30).

## II.    APPLICABLE LAW AND DISCUSSION

Rivera-Fernández moves for a *Franks* hearing arguing that agent Guevárez's affidavit contains "false statements and omissions, and reckless disregards for the truth...without which no probable cause would have been found." (Docket No. 26 at 1). Relying on his own unsworn declaration under the penalty of perjury pursuant to 28 U.S.C. § 1746 (Docket No. 26-2), Rivera-Fernández contests the alleged observations made by agent Guevárez. The crux of Defendant's argument is that (1) a 7-foot wall and a carport gate obstruct sight into Rivera-Fernández's home; (2) his truck parked in front of the house further obstructs any viewpoint into the home; and (3) the active drug point down the street from his home make it implausible for an unknown car to have been parked in the area without being noticed by residents. (Id.). To illustrate the point, Defendant inserts several photographs of his home and surrounding area in an attempt to establish the impossibility of agent Guevárez's observations from different angles.

Defendant's statement under the penalty of perjury also asserts that he is not the owner of any drug point and that only him and his girlfriend have access to the home. (Id.). Rivera-Fernandez also seeks suppression of the items seized from his truck claiming that the warrantless search of the vehicle was the fruits of the illegal search of his home and that any consent given was involuntary because he "simply submitted to law enforcement's show of force and claims of authority." (Docket No. 26 at 11).

The Government opposes the motion to suppress and requests that it be denied without holding an evidentiary hearing. It argues that Defendant has failed to rebut the presumption of validity that a search conducted pursuant to a search warrant carries, and to make the substantial preliminary showing necessary under *Franks v. Delaware* that the agent's affidavit contained false statements or that any such statements were material to the finding of probable cause. (Docket No. 30). The Government underscores that far from showing that the affidavit contains intentional or reckless falsehoods, Defendant's declaration under the penalty of perjury as well as the photos attached to his motion make the agent's observations possible, "more so when he was using binoculars." (Id. at 7). Further, the Government contends that even with the alleged false statements set to one side, the affidavit contains enough information supporting a finding of probable cause inasmuch as the surveillance conducted corroborated the information provided by the paid police informant. It is also asserted that even if the Court were to conclude that probable cause was lacking, the good-faith exception established in *United States v. Leon*, 468 U.S. 897 (1984) makes suppression unwarranted. Finally, the Government maintains that the search of the truck was lawful because it was done pursuant to valid consent.

6

## A.    Legal Standards

### 1. *Franks v. Delaware*

In outlining the applicable analytical framework, I start with familiar principles. The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend IV. The protection against unreasonable intrusions by the government "stems from the Amendment's instruction that 'no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'" *United States v. McLellan*, 792 F.3d 200, 208 (1st Cir. 2015). Thus, a search warrant affidavit "must set forth particular facts and circumstances underlying the existence of probable cause." *Franks*, 438 U.S. at 165. Moreover, it has been held that "[a]n affidavit submitted in support of a search warrant application is presumed valid." *United States v. Grant*, 218 F.3d 72, 77 (1st Cir. 2000) (citations omitted). In *Franks v. Delaware*, however, the Supreme Court established the mechanism through which a defendant "may attempt to rebut this presumption and challenge the veracity of the affidavit" during a pretrial hearing. *McLellan*, 792 F.3d at 208.

But a defendant "is not entitled to a *Franks* hearing as a matter of right." *United States v. Leonard*, 17 F.4th 218, 224 (1st Cir. 2021). To obtain an evidentiary hearing under *Franks*, a defendant must make a "substantial preliminary showing" that (1) "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," and (2) "the allegedly false statement is necessary to the finding of probable cause." *United States v. Reiner*, 500 F.3d 10, 14 (1st Cir. 2007) (quoting *Franks*, 438 U.S. at 155-56); *see also United States v. Moon*, 802

7

F.3d 135, 149 (1st Cir. 2015). A claim that a material omission was made could also constitute the basis for a *Franks* hearing. *United States v. Barbosa*, 896 F.3d 60, 68 (1st Cir. 2018) (citing *United States v. Hadfield*, 918 F.2d 987, 992 (1st Cir. 1990)). With respect to omissions, "[t]he required showing is two-fold: first, the omission must have been either intentional or reckless; and second, the omitted information, if incorporated into the affidavit, must be sufficient to vitiate probable cause." *Id.* (citations omitted). An attack on a search warrant affidavit "must be more than conclusory and must be supported by more than a mere desire to cross-examine." *United States v. Graf*, 784 F.3d 1, 8 (1st Cir. 2015) (quoting *Franks*, 438 U.S. at 171). And allegations of deliberate falsehoods or of reckless disregard for the truth "must be accompanied by an offer of proof" in the form of "[a]ffidavits or sworn or otherwise reliable statements of witnesses[.]" *Franks*, 438 U.S. at 171. When a *Franks* hearing is granted, and a defendant demonstrates by a preponderance of the evidence "'perjury or reckless disregard' 'the search warrant must be voided and the fruits of the search excluded,' unless there is another basis for probable cause in the warrant besides the false statements." *United States v. Graf*, 784 F.3d at 8 (quoting *Franks*, 438 U.S. at 156).

### 2.    *Consent*

It is axiomatic that warrantless searches and seizures are *per se* unreasonable unless they fall within one of the "few specifically established and well-delineated exceptions" to the Fourth Amendment warrant requirement. *Katz v. United States,* 389 U.S. 347, 357 (1967). Consent is one of the recognized exceptions to the warrant requirement for it has been held that "a warrantless search may be conducted with the voluntary consent of a person authorized to give it." *United States v. Stierhoff*, 549 F.3d

19, 23 (1st Cir. 2008) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973)). To assess whether consent was given voluntarily, courts must consider "the totality of the circumstances, including the persons' age, education, experience, intelligence, and knowledge of the right to withhold consent." *United States v. Ramdihall*, 859 F.3d 80, 89 (1st Cir. 2017) (quoting *United States v. Forbes*, 181 F.3d 1, 6 (1st Cir. 1999)). Courts must also consider "whether [the defendant] was advised of his . . . constitutional rights and whether permission to search was obtained by coercive means or under inherently coercive circumstances." *Id.*

**B.    Discussion**

### 1.    *Defendant has not met his burden to show entitlement to a Franks hearing.*

Rivera-Fernández's offer of proof in his motion as well as in his declaration under the penalty of perjury boils down to a conclusory and speculative allegation that PRPB agents could not have done surveillance on September 17, 2025, because the view to his house is obstructed by a 7-foot wall and metal carport, his truck was parked in front of the residence further obstructing the visibility, and because an unknown car could not park in the area without being noticed by the neighbors and drug point folks. That is the extent of the proffer made by the Defendant. The Government correctly points out, however, that Defendant's own photos show that the wall, carport gate, and truck only obstruct visibility partially and that there are angles and vantage points that make the observations possible depending on where the agents positioned themselves to conduct the surveillance. (Docket No. 26 at 6-10). While the affidavit of agent Guevárez only

vaguely mentions a strategic location, it is the Defendant who carries the burden to show material falsehoods or omissions.

I also agree with the Government that the photos show that the balcony of the residence is elevated from ground level, making it easier to see someone standing on it. Add to that that the affidavit mentions that the agent was using binoculars. And again, in a rather conjectural fashion, Defendant contends that it is "highly improbable" that the agents could have conducted the surveillance from locations where visibility is unobstructed because the unfamiliar car of the agents would have been noticed. But a claim that something is highly improbable or even incredible, without more, is insufficient to meet a Defendant's burden under *Franks* to obtain a hearing. *See United States v. Perez-Velazquez*, 488 F. Supp. 2d 82, 102 (D.P.R. 2006) (recommending denial of a *Franks* hearing and finding as insufficient claim that observation was "inherently unreal" and that there was no way agent could have observed defendant's actions from his vantage point.). Simply put, Rivera-Fernández has not made a substantial preliminary showing that the agents could not see the illegal conduct they claim to have seen on September 17, 2025, and on which the finding of probable cause was based.

My conclusion is not affected by Defendant's statements in his declaration under the penalty of perjury that he is not the owner of any drug point and that only he and his girlfriend had access to the home. (Docket No. 26-2). The First Circuit has held that a defendant's own denial of the law enforcement statements which he purports to be false, without more, is insufficient to satisfy the "substantial preliminary showing necessary to justify a *Franks* hearing." *United States v. Moon*, 802 F.3d at 150-51. *See also United States v. Southard*, 700 F.2d 1, 10 (1st Cir. 1983) (upholding denial of *Franks* hearing

where district court found appellants' flat denials of gambling-related conversations insufficient to meet the "substantial preliminary showing" requirement). Rivera-Fernández's generalized denials of the factual affirmations in agent Guevárez's affidavit "'fall well short of a 'substantial preliminary showing' required to justify a *Franks* hearing." *United States v. Bracero-Cruz*, No. 25-cr-281 (ADC), 2026 WL 674124, 2026 U.S. Dist. LEXIS 50653, at *12-14 (D.P.R. Mar. 10, 2026) (Morgan, M.J.). The motion to suppress should be denied without a hearing.[1]

### 2. *An evidentiary hearing is likewise not warranted on the issue of consent.*

There is "no presumptive right to an evidentiary hearing on a motion to suppress." *United States v. Cintron*, 724 F.3d 32, 36 (1st Cir. 2013). In deciding whether to grant a hearing, the court must answer the question "did the defendant make a sufficient threshold showing that material facts where in doubt or dispute?" *United States v. Allen*, 573 F.3d 42, 50-51 (1st Cir. 2009) (quoting *United States v. Vilches-Navarrete*, 523 F.3d 1, 15 (1st Cir. 2008)). The dispute of material facts must be such that it cannot be reliably resolved on a paper record and "which, if resolved in his favor, would entitle [the defendant] to the requested relief." *United States v. Francois*, 715 F.3d 21, 36 (1st Cir. 2013). The defendant carries the burden to "allege facts, 'sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented.'" *United States v. Calderon*, 77 F.3d 6, 9 (1st Cir. 1996) (quoting *United States*

---

[1] Given my finding regarding the *Franks v. Delaware* issue, I find it unnecessary to address the Government's alternative arguments that the search warrant affidavit contained enough information to support a finding of probable cause even without consideration of the alleged false statements and that the *Leon* good faith exception applies. *See United States v. Ribiero*, 397 F.3d 43, 52 n.7 (1st Cir. 2005).

*v. Lewis*, 40 F.3d 1325, 1332 (1st Cir. 1994)). And the court may choose not to hold an evidentiary hearing when a defendant offers no affidavits or other evidence in support of his motion to suppress. *Calderón*, 77 F.3d at 9.

Here, I find that in addition to having failed to make a substantial preliminary showing to obtain a *Franks* hearing, Rivera-Fernández has also failed to make a threshold showing that there are material factual disputes on the question of whether he voluntarily consented to the search of his truck. He argues, first, that the search of the truck was unlawful because it was fruits of the illegal search of his home pursuant to a warrant that contained falsehoods and intentional omissions. Second, Rivera-Fernández maintains that his consent was involuntary since he "simply submitted to law enforcement's show of force and claims of authority" given that he was detained, surrounded by armed officers, and he was not advised of his Miranda rights prior to signing the consent form. I note that Defendant dedicates only one rather conclusory paragraph in his motion to the issue of consent, and zero paragraphs in his unsworn statement under the penalty of perjury.

I quickly dispose of the first variant of Defendant's challenge because I have already found that the evidence proffered fell short of making the substantial preliminary showing required for a *Franks* hearing, namely that the search warrant affidavit contained false statements or material omissions. Therefore, the consented search of the truck cannot be said to have been tainted by the purportedly unlawful search of the home. *See United States v. Morales-Castro*, 947 F. Supp. 2d 166, 176 (D.P.R. 2013) (finding that the consent obtained by law enforcement to search a vehicle was not tainted by an illegal search because the defendant failed to establish by a preponderance of the

evidence under *Franks v. Delaware* that the search warrant affidavit contained false statements).

The second variant of the suppression argument fares no better. Defendant claims that he felt compelled to consent because there were numerous armed police officers surrounding his home, he was in custody, contraband had already been seized, and he was not advised of his Miranda rights before signing the consent form. The Government ripostes that the totality of the circumstances establish he voluntarily gave written consent. For example, as owner of the vehicle, Defendant had authority to give such consent. Additionally, the Government posits that his age, education, intelligence, experience, and knowledge of the right to withhold consent as well as the absence of coercive tactics, are all factors that rendered Defendant capable of providing voluntary consent. Rivera-Fernández is 45 years old, has an 11th grade education, and previous encounters with the law, including a conviction. He also admitted during his custodial interview with ATF that he responded in the affirmative when asked by PRPB agents if he had anything illegal in his vehicle. At no time during said interview, Defendant made any claim that he was coerced or pressured in any way by law enforcement agents.

Rivera-Fernández, on the other hand, has done very little in the form of evidentiary proffers to rebut any of the above-outlined circumstances to create a material factual dispute that if resolved in his favor would entitle him to the relief requested, which is suppression of the evidence seized from his truck. *See United States v. Santiago*, 826 F. Supp. 2d 337, 343 (D. Mass. 2011) (finding defendant failed to make the required threshold showing that material facts were in doubt to obtain an evidentiary hearing and that the record demonstrated that the search of the vehicle fell within consent to search

13

exception to the warrant requirement.). The vague allegation of submission to law enforcement's show of force and claims of authority in his motion is not enough. *See, e.g., United States v. Calderon*, 77 F.3d at 9 (affirming decision to deny motion to suppress without an evidentiary hearing where defendant "vaguely" claimed that his consent was coerced but did not describe the circumstances supporting this assertion or offer proof relative to other facts that might support the assertion). Thus, I find Defendant has not sufficiently established a dispute of material facts to be entitled to an evidentiary hearing on the claim of involuntary consent.

### III.   CONCLUSION

In view of the foregoing, I recommend that Rivera-Fernández' motion to suppress (Docket No. 26) be DENIED without a hearing.

This report and recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court **within 14 days**. Failure to file timely and specific objections is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico this 27th day of May, 2026.

S/Héctor L. Ramos-Vega
HÉCTOR L. RAMOS-VEGA
UNITED STATES MAGISTRATE JUDGE